DUNCAN, Respondent, vs. CITY OF GRAND RAPIDS, Appellant.

*March 28—April 19, 1904.*

*Municipal corporations: Injury from defective sidewalk: Description of defect in notice and complaint: Variance: Amendment: Evidence: Contributory negligence: Instructions: Damages.*

1. In an action for personal injuries alleged to have been caused by a defective sidewalk, the complaint described the defect as a hole caused by the adjoining edges of two planks having rotted away. The notice of injury had described it as a hole caused by the fact that a considerable portion of two planks had rotted away *and broken;* and the evidence showed that besides the complete rotting away of a portion of the planks the partially rotted edge of one had been splintered and broken so as to enlarge the hole. *Held,* that the variance was not material, and, though the description in the complaint might apply to another defect in the vicinity, such ambiguity could not be ascribed to any purpose to mislead.

2. An amendment of the complaint, in such case, to conform to the evidence being unnecessary, the allowance of such an amendment was without prejudice.

3. A witness who had made measurements to ascertain the exact location of the defect several days after the injury, and after

the planks had been removed, claimed to be able to locate the place by his memory and by a gathering of rotten wood on the ground which he had observed under the hole while the sidewalk was in place at and before the time of the injury. *Held*, that his testimony as to measurements was admissible.

4. Where an injury was caused by a rotted hole in a plank sidewalk, evidence that there were other similar holes and that the whole walk was old, worn out, and rotten, was admissible.

5. One who, having no prior knowledge of defects, was injured by stepping into a rotted hole in a sidewalk upon a main street of a city, was not guilty of contributory negligence, as matter of law, merely because, as she passed along, she was engaged in conversation and gave no particular attention to the surface of the walk, although she had observed that it was a plank walk and in places was "kind of teetery."

[6. Whether an instruction that, "the whole twelve jurors must approve of and agree to all and every one of the answers made and returned" was error, for the reason that it gave the jury to understand that they could not disagree but that an agreement one way or the other was compulsory, not decided.]

7. Upon evidence tending to prove that as a result of a fall on a defective sidewalk plaintiff received severe external bruises, suffered much pain, was confined to her bed for six weeks, and was disabled from comfortable performance of her household duties for a long time, and also suffered some injury to organs in the pelvic region, it was not an abuse of discretion to refuse to set aside as excessive a verdict for $1,000.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action for personal injuries received August 9, 1901, from a fall on an alleged defective sidewalk on Baker street in Grand Rapids, claimed to have been occasioned by a hole in the sidewalk into which plaintiff stepped while passing along in broad daylight, giving no special attention to the sidewalk, but engaged in conversation. The defect was described in the notice to consist in that two of the planks in the sidewalk were decayed and considerable portions thereof rotted away and broken, so as to make a hole about nineteen inches long by eight inches wide and ten inches deep, enhanced by rotten stringers and looseness of the planks. Claim was filed with

the city clerk November 5, 1901, not acted on by the council, and appeal taken to the circuit court more than eighty days thereafter. No notice of the council's action or nonaction was served on plaintiff. The jury, by a special verdict, found (1) the injury; (2) sidewalk defective and unsafe; (3) for so long a time that the city ought to have known and repaired; (4) the proximate cause of the injury; (5) no contributory negligence; and (6) damages, $1,000. Defendant moved to change the answers to the fourth and fifth questions and for judgment upon the verdict so changed, and also for a new trial, both of which motions were overruled and judgment entered for the plaintiff, from which the defendant appeals.

The cause was submitted for the appellant on the brief of *John A. Gaynor,* attorney, and *B. R. Goggins,* of counsel, and for the respondent on that of *Brennan & Frost* and *D. D. Conway.*

Dodge, J. This case presents several questions which have been considered and disposed of in *Lyon v. Grand Rapids, ante,* p. 609, 99 N. W. 311; the counsel being identical in both cases. It will therefore be unnecessary, as to such questions, to do more than apply the decision reached in that case. Those questions are:

First, the validity of the appeal, taken more than eighty days after the filing of the claim with the city clerk, but before any notice of its disallowance by the common council had been given to plaintiff. That objection must, upon the authority of the *Lyon Case,* be ruled against the appellant, and the action of the trial court in refusing to dismiss the appeal be affirmed.

Next is the criticism of the third question of the special verdict, which was the same in both cases. That, too, is ruled against the appellant by the *Lyon Case,* and we must hold

here that no prejudicial error is well assigned upon that question.

The charge of the court with reference to the third question contains the same information to the jury as to the grounds of liability and the general rules of law under which the city may be charged, and is objectionable and prejudicially erroneous for the same reasons stated in the *Lyon Case*.

One of the most seriously argued assignments of error is based upon the contention that the defect proved was other than that alleged in the complaint and that described in the notice of injury served on the city; and upon this difference it is urged, first, that the notice was thereby misleading; and, secondly, that an amendment allowed to the complaint at the close of the trial, making the description correspond with the evidence, was erroneous. The complaint alleged the existence of a hole of the dimensions mentioned in the statement of facts, caused by the adjoining edges of two successive planks having decayed and rotted away in such manner as to leave such hole, and that the stringers were badly rotted, so as not to hold the nails. The notice ascribed the defect to the fact that two of the planks were decayed and a considerable portion thereof rotted away and *broken*—so much so that an open space and hole therein existed of the said dimensions—and also that the stringers were rotted. The evidence tended to show that the walk was constructed with a longitudinal stringer in the middle, and that in the south half there was a rotting away of the adjoining edges of two boards, said rotting away being complete for two or three inches, and that on the east edge of this hole one of the boards was further splintered and broken down immediately adjoining the middle stringer, so that the hole was some eight inches wide at the widest point along the stringer, running in a triangle with the apex toward the south. It appeared, however, that this splintered and broken-down board or plank, which

was originally two inches thick, had so rotted away underneath that there was only about half an inch of thickness not crumbled away. There was also evidence that in the north half of the walk, in about this same neighborhood, there was a hole between two planks, resulting from the rotting of adjoining edges, but without any breaking or splintering, some four or five inches wide; and some suggestion appears that other similar holes elsewhere in the walk existed. The contention is that the description of the complaint could have applied only to this hole in the north half of the walk, where there was only a rotting away and no breaking down. It will, however, be observed that the original notice and claim both mentioned the fact of the breaking down of part of one of the planks as a characteristic of the defect; hence it is apparent that the notice, instead of tending to mislead into an understanding that the injury resulted from the hole in the north half of the walk, tended directly to call attention to the distinguishing characteristic of the hole in the south half. True, the complaint differed in this respect, and it might have been held more accurately to describe a defect from which the plaintiff did not suffer, instead of the one from which she did, but we cannot think the difference at all material. A hole of the dimensions described, alleged to have been caused by the adjoining edges having decayed and rotted away, is in no wise an incorrect description of one which has been enlarged by the breaking down of the edges of the board as a result of rot and decay, although portions thereof so broken are not entirely rotted and crumbled out of existence. It does not appear that plaintiff had any knowledge of the other holes in the walk, apart from their existence, so that, though complaint might be ambiguous by reason of its possible reference to one or another defect, it cannot be ascribed to any purpose to mislead on her part. We are convinced that the description in the notice accurately applied to the defect proved by the evidence, and that the departure of the

complaint from accuracy of description was so slight as to render amendment unnecessary and therefore, if at all improper, entirely without prejudice.

Objection is made to the admission of certain evidence: First, that of one La Breche as to measurements made to ascertain the exact location of the defect several days after the injury, and after the planks had been removed and carried away by the owner of the abutting premises. He claimed to be able to locate the place of the defect by his memory, and by observing a gathering of rotten wood on the ground, which he had also observed under this hole while the sidewalk was in place at and before the time of the injury. We think this rendered his testimony as to measurements admissible, although the uncertainty bore upon its accuracy and his credibility.

A further criticism of the testimony of this and other witnesses is that they were allowed to testify to the existence of other rotted holes in the walk, most of them of less dimensions, and also to the generally rotted condition of the stringers after the boards were removed. It was proved without dispute that the sidewalk was old and that the under side of this board in question, in common with others, was largely rotted away, leaving but a thin surface of cohesive wood. In the admission of this evidence there was no error. The defect from which plaintiff suffered was an immediate result and concomitant of a generally old, rotted, and worn condition of the sidewalk, similar to some of the other defects described, though slightly greater in degree, and just such as might naturally and reasonably be expected to develop from the worn-out and rotted condition of the whole walk. Under such circumstances, the propriety of proving the generally defective condition has been often approved, and is entirely settled.    *Barrett v. Hammond,* 87 Wis. 654, 58 N. W. 1053; *McHugh v. Minocqua,* 102 Wis. 291, 78 N. W. 478.

It is claimed that the trial court should have held the

plaintiff guilty of contributory negligence as matter of law, and amended the verdict accordingly. The evidence is simply that she had no previous knowledge of the existence of this defect or of the condition of the walk; that she passed over it in broad daylight, engaged in conversation with her daughter, carrying a parasol; and that she gave no particular attention to the surface of the walk, although she observed that it was a plank walk and that in places it was not solid— "was kind of teetery," as she expressed it. There is no case in this court which justifies the holding, as matter of law, that it is negligence to pass over a sidewalk upon a main street in a city without carefully observing the condition thereof at each point where the traveler steps, unless she has knowledge of the defects to render it perilous. That a sidewalk is shaky and "teetery" does not necessarily—certainly as matter of law —suggest to every one that its surface is probably broken by holes in which she may step. In the absence of such suggestion, or any other knowledge of defects, one is entitled to assume that a sidewalk upon a principal, traveled thoroughfare in a city is safe enough to pass over in the ordinary manner of foot passengers. *Wheeler v. Westport,* 30 Wis. 392; *Barstow v. Berlin,* 34 Wis. 357. We are not prepared to say, as matter of law, that attention to conversation with a companion and failure to carefully observe every foot of the walk is so variant from the conduct of the ordinary person that it must be held negligence *per se.* The authorities relied on by appellant—*Devine v. Fond du Lac,* 113 Wis. 61, 88 N. W. 913; *Seaver v. Union,* 113 Wis. 322, 330, 89 N. W. 163— were both cases where the plaintiffs had knowledge of the defect and its peril and departed from the safe course in order to bring themselves in contact with it.

It is further assigned as error that the court told the jury: "The whole twelve jurors must approve of and agree to all and every one of the answers made and returned:" contend-

Duncan v. Grand Rapids, 121 Wis. 626.

ing that this must or might have been understood as leaving them no opportunity to disagree upon their verdict, but as warning them that an agreement one way or the other was compulsory. We think this is a very strained construction of the language of the court in the connection where used, but need not decide as to whether error was committed, since reversal must result on other grounds, and a different phraseology will very likely be adopted upon another trial.

The remaining assignment of error is upon the refusal of the court to hold the damages of $1,000 excessive. There was evidence tending to prove that, as a result of her fall, plaintiff received severe external bruises, suffered much pain, was confined to her bed for six weeks, largely disabled from comfortable performance of her household duties for a long time thereafter, and that, by reason of the shock or jar, injury resulted to some organs in the pelvic region and the ligaments connected therewith, which had not entirely disappeared at the time of the trial. If the jury believed in the existence of all of the injuries thus described as results of plaintiff's fall, we cannot say, as matter of law, that the verdict is so excessive as to convict the trial court of abuse of discretion in declining to set aside or reduce it.

By reason of the error in instructing the jury as to the third question in the special verdict, there must be reversal.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.